UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

G.R.R.,

                Petitioner,

     v.

LAURA HERMOSILLO,

                Respondent.

CASE NO. 2:26-cv-00097-GJL

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner G.R.R. ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On January 11, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from custody. *Id.* The Petition has been fully briefed. Dkts. 1, 5, 8.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition.

//

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 1

# I.    BACKGROUND

Petitioner is a citizen of Mexico. Dkt. 6 at ¶ 4; Dkt. 7-1 at 2. In June 2023, United States Border Patrol ("USBP") received information from Mexican authorities that Petitioner was in the Tri-Cities, Washington, area of the United States without authorization. Dkt. 7-1 at 4. Respondents allege additional checks into Petitioner's records revealed an INTERPOL Red Notice based on a Mexican arrest warrant issued for a violent kidnapping in Michoacan, Mexico. *Id.* Respondents have not provided the INTERPOL Red Notice referenced in Petitioner's I-213 Forms. *See* Dkts. 7-1, 7-7. On July 6, 2023, USBP officers arrested Petitioner in Kennewick, Washington. *Id.*; Dkt. 7-2. Plaintiff informed officers he had entered the country on or about January 15, 2022, near Laredo, Texas. Dkt. 7-1 at 4–5.

The Department of Homeland Security ("DHS") detained Petitioner and placed him in removal proceedings under Section 240 of the Immigration and Nationality Act ("INA"), subject to removal pursuant to Section 212(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. 7-4. Petitioner was issued a Notice to Appear before an immigration judge ("IJ") on August 8, 2023, in Tacoma, Washington. *Id.* Respondents allege ICE did not have the required use authorization to disclose the INTERPOL Red Notice at this stage in removal proceedings, so the IJ was unable to consider it during the initial bond determination. Dkt. 5 at 4 (citing ICE Directive 15006.1: INTERPOL Red Notices and Wanted Person Diffusions (Sept. 2023) ("ICE Directive 15006.1"), available at: http://ice.gov/doclib/foia/dro_policy_memos/15006.1_InterpolRedNoticesWpDiffusions.pdf).[1]

---

[1] Petitioner has attached a copy of ICE Directive 15006.1 to his Traverse. *See* Dkt. 8-1

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 2

On October 18, 2023, the IJ granted Petitioner a change in his custody status and ordered his release from custody subject to a $10,000 bond and "any conditions set by ICE/DHS."[2] Dkt. 7-5. Petitioner was released from federal custody and placed in the Alternative to Detention ("ATD") program with periodic required check-ins. Dkt. 6 at ¶ 7. At some point, Plaintiff expressed fear of returning to Mexico and applied for asylum. Dkt. 7-6 at 4. He also successfully obtained work authorization that was valid through April 25, 2029. Dkt. 7-9 at 2.

Respondents allege the United States National Central Bureau of the Department of Justice ("USNCB") granted use authorization for Petitioner's INTERPOL Red Notice in removal proceedings on August 29, 2025. Dkt. 6 at ¶ 8. When Petitioner reported for his ATD check-in on October 1, 2025, the ICE Office of Enforcement and Removal Operations ("ERO") determined Petitioner "would be re-detained as a violation of his bond conditions" based on the use authorization. Dkt. 6 at ¶ 9. ICE arrested Petitioner that day and cancelled his prior bond. Dkt. 7-7; Dkt. 7-8. Petitioner was transferred to the NWIPC. Dkt. 6 at ¶ 10. Petitioner remains in custody at NWIPC and alleges Respondents have yet to provide him with a copy of the referenced INTERPOL Red Notice. Dkt. 5; Dkt. 6 at ¶ 3; Dkt. 8 at 9.

On November 28, 2025, the IJ entered an order finding Petitioner removable under the INA and denying Petitioner's requests for relief. Dkt. 7-9. Petitioner's appeal to the Board of Immigration Appeals remains pending. Dkt. 6 at ¶ 12.

## II.    PROCEDURAL HISTORY

Petitioner filed his Petition pursuant to 28 U.S.C. § 2241 on January 11, 2026. Dkt. 1. Petitioner alleges Respondents violated his constitutional guarantees of due process under the

---

[2] While the Petition states the initial bond was $8,000, Dkt. 1 at 8, the Order of the IJ indicates the bond was $10,000. Dkt. 7-5 at 2. This is supported by the parties' reference to the $10,000 bond in the Return and the Traverse. Dkt. 5 at 4; Dkt. 8 at 5.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 3

Fifth Amendment by re-detaining him and cancelling his bond without a pre-deprivation hearing.[3] Dkt. 1 at 9–10; Dkt. 8 at 1. On January 26, 2026, Respondents filed a Return arguing Petitioner's re-arrest was lawful and satisfied due process requirements. Dkt. 5. On January 30, 2026, Petitioner filed a Traverse. Dkt. 8.

Having reviewed the parties' arguments and the relevant legal authority, the Court agrees with Petitioner for the following reasons.

### III.   LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*,

---

[3] The Petition includes a claim under the Fourth Amendment. Dkt. 1 at 9. In their Return, Respondents challenged the Fourth Amendment claim as unsupported and conclusory in nature, Dkt. 5 at 10–11, and Petitioner did not respond to their arguments in the Traverse, Dkt. 8. Having found Petitioner entitled to relief under the procedural due process clause of the Fifth Amendment, the Court declines to consider the Fourth Amendment herein.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 4

53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

## IV.   DISCUSSION

At the outset, Respondents argue ICE appropriately exercised its discretion to revoke Petitioner's bond in accordance with the governing statute and regulations, which do not require ICE to provide a hearing prior to revoking an individual's release and bond. Dkt. 5 at 6 (citing 8 U.S.C. § 1226(b); 8 C.F.R. 236.1(c)(9)). However, Respondents acknowledge courts in this District and others have recently found pre-detention hearings required in the context of various forms of release. *Id*. at 6 n. 1 (citing *E.A.T.-B. v. Wamsley*, No. 2:25-cv-1192, 2025 WL 2402130, at *5 (W.D. Wash. Aug. 19, 2025) (revocation of an OREC requires a pre-detention hearing to determine if that noncitizen is a flight risk or a danger to the community); *Guzman v. Andrews*, No. 1:25-cv-01015-KES-SKO (HC), 2025 WL 2617256, at *2 (E.D. Cal. Sept. 9, 2025) (pre-detention hearing required prior to revocation of the petitioner's release on bond); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1038 (N.D. Cal. 2025) (pre-detention hearing required prior to revocation of the petitioner's release her own recognizance)); *see also Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 263 (D. Me. 2025) (requiring a custody re-determination before an immigration judge before re-arresting a noncitizen); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

Regardless of Respondents' statutory and regulatory obligations, the Government must still comply with constitutional requirements of due process. *See Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ( "[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). As in these other cases involving detention after

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 5

revocation of a prior release, the parties have analyzed the constitutionality of Petitioner's re-arrest applying the *Mathews* factors. Dkt. 5 at 7; Dkt. 8 at 6. The Court similarly addresses each *Mathews* factor in turn.

**A.      Petitioner's Liberty Interest at Stake**

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee"). That Petitioner was re-detained and remains in custody months later undoubtedly presents a deprivation of Petitioner's interest in his liberty.

Respondents emphasize that Petitioner's release from custody was already conditional upon payment of a bond and any conditions set by ICE/DHS. Dkt. 5 at 8. However, "[e]ven individuals who face significant constraints on their liberty or over whose liberty the [Government] wields significant discretion retain a protected interest in their liberty." *Pinchi*, 792 F. Supp. 3d at 1032; *see also Ramirez Tesara*, 800 F. Supp. 3d at 1136–37 ("That the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining the parolee."). Respondents further argue the revocation of Petitioner's release was

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 6

based on the Government's "new ability to rely on Petitioner's INTERPOL Red Notice." Dkt. 5 at 8. However, it is undisputed that the INTERPOL Red Notice preceded Petitioner's initial arrest, Dkt. 7-1 at 4, and Respondents have not explained how the preexisting INTERPOL Red Notice can reasonably be attributed to Petitioner as a post-hoc "violation of his bond conditions." *See* Dkt. 6 at ¶ 9 ("ERO determined that because use authorization of the INTERPOL Red Notice was given, [Petitioner] would be re-detained as a violation of his bond conditions.").

Petitioner's initial release on bond by the IJ strengthened Petitioner's liberty interest in remaining free from detention, and Respondents have not presented any evidence that Petitioner diminished his interest after the bond hearing. *Tzafir v. Bondi*, No. 2:25-cv-02126-JHC, 2026 WL 81759, at *3 (W.D. Wash. Jan. 12, 2026) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same)). At the time of his initial arrest in July 2023, Petitioner had been living in the United States since January 2022, without incident. Dkt. 7-1 at 4–5. After his initial detention and subsequent release on bond, Petitioner lived in the community and obtained work authorization. Dkt. 7-6. He appears to have fully complied with the conditions of his release, as evidenced by his appearance at the scheduled ICE check-in where he was re-arrested. *Id.*

For these reasons, Petitioner has a strong liberty interest in remaining free from detention. Thus, the first *Mathews* factor favors Petitioner.

**B.      Risk of Erroneous Deprivation of Petitioner's Liberty**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and the probable value, if any, of additional procedural safeguards. *Mathews*, 424 U.S. at 335. Having reviewed Petitioner's allegations along

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 7

with Respondents' justifications for his re-arrest, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest.

Respondents allege ICE re-arrested Petitioner and cancelled his bond solely because of the newly obtained use authorization for Petitioner's INTERPOL Red Notice.[4] Dkt. 5 at 5; Dkt. 6; Dkt. 7-6. Petitioner argues ICE's reliance on an INTERPOL Red Notice to re-arrest Petitioner creates a risk of erroneous deprivation of liberty, and this Court agrees.

The Ninth Circuit and others have acknowledged unsubstantiated INTERPOL Red Notices raise questions of reliability that require additional consideration. *See Gonzalez-Castillo v. Garland*, 47 F.4th 971, 978 (9th Cir. 2022) (observing an INTERPOL Red Notice alone is not ordinarily sufficient to establish probable cause that a crime has occurred) (citing *Radiowala v. Att'y Gen. United States*, 930 F.3d 577, 580 n.1 (3d Cir. 2019); *Hernandez Lara v. Barr*, 962 F.3d 45, 48 n.3 (1st Cir. 2020); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 24–25 (1st Cir. 2021); *Barahona v. Garland*, 993 F.3d 1024, 1028 (8th Cir. 2021)); *see also Doe v. Becerra,* 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting Congressional concerns regarding the reliability of INTERPOL Red Notices) (citing 22 U.S.C. § 263b(a)).

Petitioner emphasizes that ICE Directive 15006.1, cited by Respondents, cautions against relying solely on INTERPOL Red Notices given the potential for misuse or non-compliance with INTERPOL's rules. Dkt. 8 at 9 (citing Dkt. 8-1). Petitioner further argues Respondents failed to

---

[4] The Petition implies current immigration policies may have guided ICE's decision to re-arrest Petitioner rather than the alleged INTERPOL Red Notice. Dkt. 1 at 7–8. This impression is not refuted by ICE characterizing the preexisting INTERPOL Red Notice "as a violation of [Petitioner's] bond conditions," Dkt. 6 at ¶ 9, or the following language from Petitioner's secondary I-213 form: "ICE OPLA was just granted authorization to use the Red Notice in removal proceedings, and this was *used to justify* [Petitioner]'s re-arrest and bond cancellation," Dkt. 7-6 at 3 (emphasis added). Regardless of the underlying motivation, Respondents were required to effectuate the detention in a manner that comports with due process and failed to do so for the reasons set forth herein. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("Ultimately, even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his ATD violations, it would not necessarily follow that Petitioner can be detained for those violations without a hearing.").

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 8

provide the INTERPOL Red Notice and its underlying documentation to Petitioner along with a meaningful opportunity to respond or contest its contents as required in ICE Directive 15001.6. Dkt. 8-1 at 6. Petitioner reasonably objects to the Respondents' reliance on certain provisions of ICE Directive 15001.6 to explain its failure to disclose the INTERPOL Red Notice at the initial bond hearing while simultaneously failing to comply with the provisions intended to protect Petitioner's liberty interest.

In *Doe v. Becerra*, the court considered the risk of erroneous deprivation where ICE re-arrested a petitioner subject to an INTERPOL Red Notice that had previously been released on bond by an IJ.[5] 787 F. Supp. 3d at 1093. The court's analysis of the second *Mathews* factor in *Doe* is equally fitting here:

> The Immigration Court may ultimately determine that Petitioner now presents a danger to the community or risk of flight, and the Court expressly makes no finding as to whether or not detention is warranted under that standard and expresses no opinion on that issue. However, given that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high. Moreover, the value in granting Petitioner procedural safeguard is readily apparent. At a hearing, a neutral decisionmaker can consider all of the facts and evidence before him to determine whether Petitioner in fact presents a risk of flight or dangerousness. The reliability and significance of the alleged changes in circumstance that Respondents identify can be weighed and Petitioner's liberty interests can be protected.

*Id.* at 1094.

The tenuous basis for revoking Petitioner's bond, coupled with the inherent value in providing Petitioner with notice and an opportunity to respond before an IJ as reflected in ICE Directive 15006.1, highlights the risk of erroneous deprivation of Petitioner's liberty interest. *See*

---

[5] Unlike the Petitioner in this case, the petitioner in *Doe v. Becerra* also had a post-release criminal charge that was dismissed after successfully completing a diversion program and missed one of his scheduled conferenced with the IJ while he was in the hospital. *Doe*, 787 F. Supp. 3d at 1092–93.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 9

*Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1144 (9th Cir. 2018) (reciting rule that due process "always requires, at a minimum, notice and an opportunity to respond") (internal quotations and citations omitted). Accordingly, the second *Mathews* factor weights in Petitioner's favor.

**C.      Government Interest in Civil Detention**

In the third and final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing. *Mathews*, 424 U.S. at 335.

While the Court acknowledges the Government's heightened interest in the immigration detention context, it also notes that custody hearings in an immigration court are routine and impose minimal cost. *See Tzafir*, 2026 WL 81759, at *5. Respondents have articulated no legitimate countervailing interest to justify detaining Petitioner without a pre-detention hearing. *See Ramirez Tesara,* 800 F. Supp. 3d at 1137 (finding third factor favors petitioner where Government cites no legitimate interest for detention without a hearing or evidence that a pre-detention hearing would impose an administrative or financial burden).

Even assuming, without deciding, that an INTERPOL Red Notice like Petitioner's could reasonably warrant immediate re-arrest, the Government lacked a sense of urgency in this case. Although Respondents obtained use authorization from USNCB on August 29, 2025, Respondents did not re-arrest Petitioner until October 1, 2025. Dkt. 5 at 5; Dkt. 7-6 at 3. Moreover, Respondents made no effort to seek out Petitioner for re-arrest, but instead awaited his arrival at his regularly scheduled check-in with ICE. *Id.* The undisputed facts demonstrate Respondents had not identified an urgent need to detain Petitioner before a pre-deprivation bond hearing could be held, and the Government's interest in Petitioner's immediate re-arrest in light of its actions appears to be minimal. *See E.A. T.-B.*, 2025 WL 2402130, at *5 ("the Government's interest in re-detaining non-citizens previously released without a hearing is low")

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 10

(citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). In this case, the third *Mathews* factor favors Petitioner.

In sum, the Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his re-detention violates his right to procedural due process under the Fifth Amendment.[6]

### IIII.    REMEDY

Petitioner seeks immediate release from custody. Respondents argue the appropriate relief would be for this Court to order a new bond hearing before the IJ pursuant to 8 U.S.C. § 1226(a). Dkt. 5 at 10. Respondents contend Petitioner's claim is consistent with the claims of members of the *Rodriguez Vazquez* Bond Denial Class.[7] The Court disagrees.

Petitioner does not challenge his entitlement to an initial bond hearing or even a renewed bond hearing, but instead argues his re-arrest failed to satisfy the requirements of due process. "As a remedy, courts across the country have ordered the release of individuals stemming from

---

[6] After applying the *Mathews* factors, Respondents offer a cursory argument that Petitioner is nevertheless subject to mandatory detention under Section 1225(b)(2) and express their continued disagreement with recent decisions holding otherwise. Dkt. 5 at 9 (collecting cases). Courts have broadly and repeatedly rejected this argument. *See, e.g., P.T. v. Hermosillo*, 2025 WL 3294988, at *4 n.1 (W.D. Wash. Nov. 26, 2025); *A.C.J. v. Hermosillo*, 2025 WL 3907144, at *3 n.2 (W.D. Wash. Dec. 30, 2025), *report and recommendation adopted*, No. 2:25-CV-02486-DGE, 2026 WL 73857 (W.D. Wash. Jan. 9, 2026); *Manuel v. Hermosillo*, 2025 WL 3690778, at *2 (W.D. Wash. Dec. 10, 2025), *report and recommendation adopted*, No. C25-2353-TL-MLP, 2025 WL 3697277 (W.D. Wash. Dec. 19, 2025); *see also Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1324 (W.D. Wash. 2025) (rejecting the Government's recently adopted position that Section 1225(b) applies to any applicant for admission). "The Court therefore rejects the Government's extraordinary request to treat as falling outside of the Constitution's due process guarantee the millions of immigrants who, although they may have entered unlawfully, have established lives here and made this country home." *P.T. v. Hermosillo*, 2025 WL 3294988, at n.1 (quoting *Make the Road N.Y. v. Noem*, 2025 WL 2494908, at *10-13 (D.D.C. Aug. 29, 2025)).

[7] The court in *Rodriguez Vazquez* defined the Bond Denial Class to include the following individuals:

> All noncitizens without lawful status detained at [NWIPC] who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

802 F. Supp. 3d at 1336.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 11

ICE's illegal detention." *Ebu v. Tindall*, No. 3:25-cv-779-RGJ, 2026 WL 252899, at *5 (W.D. Ky. Jan. 30, 2026) (citing *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152-53 (D. Mass. 2025) (holding that because ICE violated "its own regulations... [petitioner's] detention is unlawful and that his release is appropriate"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2025) (finding that because ICE's detention failed to follow due process, the court ordered release "pursuant to the conditions in [petitioner's] preexisting Order of Supervision."); *see also Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, --- F. Supp. 3d ----, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025) (finding release appropriate and precluding re-detention "until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate")).

Given that Petitioner's re-arrest was unlawful for the reasons set forth above, the Court finds the appropriate remedy for Petitioner's unconstitutional re-arrest is immediate release. Furthermore, Petitioner should not be re-detained without adequate notice and an opportunity to respond.

## V.   CONCLUSION

For the foregoing reasons, the Court **ORDERS**:

(1)   Petitioner's habeas Petition, Dkt. 1, is **GRANTED**;

(2)   Respondents shall release Petitioner from custody immediately under the terms of his prior conditional release;

(3)   Respondents may not re-detain Petitioner without adequate notice and a hearing before an immigration court to determine whether revocation of his initial bond is appropriate;

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 12

(4)   Respondents shall file a declaration within **24 HOURS** of the issuance of this Order, confirming that Petitioner has been released from custody and providing the date and time of his release; and

(5)   The Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition.

Dated this 12th day of February, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 13